L. D. McGREGOR, as Receiver of the TAMPA WATER WORKS Co. v. PROVIDENT TRUST COMPANY of Philadelphia, Surviving Trustee under the Will of Stuart Wood, deceased, and/or Executor under the Will of or on behalf of Edward R. Wood, Jr., Deceased, remaining under the Will of said Stuart Wood, Deceased.

162 So. 323.
Opinion Filed January 15, 1935.
Rehearing Granted March 19, 1935.
Decree Reaffirmed Without Opinion June 27, 1935.
Extraordinary Petition for Rehearing Denied August 28, 1935.

720

*Carl G. Kirsch* (Philadelphia, Pa.) and *Mabry, Reaves, Carlton & White,* for Appellant;

*Knight, Thompson & Turner,* for Appellee

DAVIS, J.—This is an appeal from a decree in equity disallowing a contested receiver's claim interposed in the court below by the appellant receiver and adjudicating in connection therewith that the estate of Stuart Wood was entitled to share in the distribution of the assets of the Tampa Water Works Company in the same proportion as other stockholders, and in proportion to the admitted stock ownership of the Stuart Wood Estate notwithstanding the claim of the receiver that Stuart Wood's estate, by reason of Stuart Wood's having withheld certain assets of the Tampa Water Works Company from that corporation during his lifetime, was under an obligation to account to the receiver for the value thereof, in order that same might be set off as a charge against Stuart Wood's admitted stock ownership in the Tampa Water Works Company at the time of his death.

The present appeal is the fourth appearance of some

phase of this litigation before this Court. For our previous opinions dealing with it see: Tampa Water Works Co. v. Wood, 104 Fla. 306, 139 Sou. Rep. 800; Wood v. Provident Trust Co., 113 Fla. 260, 152 Sou. Rep. 186; Wood v. Provident Trust Co., 113 Fla. 260, 152 Sou. Rep. 856. Therefore a brief history of the controversy is in order.

In June, 1927, Walter Wood, as a minority stockholder in the Tampa Water Works Company, filed a bill in equity against it in which he alleged that the company had been for years the owner of the waterworks which supplied the City of Tampa but that in 1923 the waterworks were purchased by the City of Tampa. He alleged that Stuart Wood, had, prior to his death, been president of, the largest stockholder of, and in complete management and control of the Tampa Water Works Company; that the company was under the "complete domination and control" of the legal representatives of the estate of Stuart Wood; that there had been certain allegedly wrongful stock transfers, and that certain lands held in trust for the company by Stuart Wood were being sold and the proceeds wrongfully appropriated to the estate of Stuart Wood by its legal representatives, to the detriment of the corporation; that the affairs of the company were being wastefully and extravagantly mismanaged and that the executors were neglecting without reason to wind up its affairs and distribute its assets.

A demurrer to the bill was overruled, and the order overruling it was sustained on appeal. Tampa Water Works Co. v. Wood, 97 Fla. 493, 121 Sou. Rep. 789. The defendant thereupon filed an answer denying the allegations of the bill, testimony was taken, and the Chancellor rendered a final decree appointing a permanent receiver for the purpose of winding up the company and distributing its assets.

In the last mentioned decree the receiver was expressly

authorized to institute such legal proceedings as might be necessary to recover for the corporation such sums as might be found to be justly due it by the estate of Stuart Wood. On appeal the Chancellor's decree in that particular was affirmed. Tampa Water Works Co. v. Wood, 104 Fla. 306, 139 Sou. Rep. 800.

Thereafter, in pursuance to a notice published by the receiver requiring all creditors, stockholders and other claimants to file their claims by a given date the Provident Trust Company, as the representative of the Stuart Wood Estate, filed a claim as the owner of 2395 shares of stock and asked the right to receive distribution accordingly. The receiver filed a contest of its claim on the ground that the matters and things set forth in the bill of complaint were true, and that by reason thereof the representatives of the estate of Stuart Wood had obtained money and property of the Tampa Water Works Company "of the amount and value of $281,112.00," and asked that the claim of the estate for a distributive share be disallowed and that the receiver be authorized to pass credit to the estate therefor against the larger amount which the estate owed the Tampa Water Works Company.

Judge Robles, the Circuit Judge, who had rendered the previous decrees, having died, the contest came on for further hearing before Judge Parks of the same court. His decree refusing to entertain it on the ground of lack of jurisdiction in himself to determine the questions raised therein was reversed on appeal. Wood v. Provident Trust Co., 113 Fla. 260, 152 Sou. Rep. 186.

In the meantime counsel for the receiver and for the estate of Stuart Wood had entered into a stipulation that all questions involved here should be tried and determined upon the evidence presented in the case of Walter Wood against

the Tampa Water Works Company and upon the pleadings in that case insofar as they might be pertinent and the pleadings filed by the parties hereto. Judge Parks proceeded then to render a decree on the merits of the receiver's contest in which he held that the lands involved were held individually by Stuart Wood, and consequently so by his estate, and not in trust for the Tampa Water Works Company, and that the contest of the receiver adverse to the claim of the estate of Stuart Wood for a distributive share should therefore be denied. The receiver appealed from that decree and it is with that appeal that we are here concerned on the present appeal.

The first question raised on this appeal is whether or not Judge Robles, in his earlier decree appointing the receiver, had settled the question of whether or not the disputed lands acquired by Stuart Wood were held in trust for the Tampa Water Works Company, or individually by the estate of Stuart Wood, and, such being so, whether or not Judge Parks' decree is erroneous by virtue of his having attempted to adjudicate a question at the time already settled by an earlier decree that had been affirmed by the Supreme Court.

By his decree of October 23, 1930 (which this Court has affirmed as hereinbefore stated), Judge F. M. Robles, who had heard the evidence consisting of some 800 pages up until that time, recited that the Court, having considered the evidence and heard arguments of counsel for the respective parties, thereupon found, ordered, adjudged and decreed as follows: (1) that it was the duty of the Court to take charge of the affairs of the Tampa Water Works Company, the defendant, for the purpose of winding up the same and equitably distributing the assets of the company amongst its stockholders according to their just rights; (2) that to discharge such duty it was necessary for the

court to appoint a receiver with authority to employ counsel and order him to institute such legal proceedings in such jurisdiction or jurisdictions as might be found necessary to accomplish an accounting between the representatives of the estate of Stuart Wood and the Tampa Water Works Company, and to recover for the corporation such sums as might be found to be justly due it by the estate,of the said Stuart Wood and the representatives of said estate; (3) that further and supplemental proceedings might be had in the pending cause, or other suits instituted in this jurisdiction to accomplish the ends of the decree then being entered, if found necessary or proper; (4) that the Court would reserve its jurisdiction of the pending cause and its power to permit and direct such further proceedings, supplemental and amendatory, as might appear necessary or expedient to accomplish the purposes of the Court's decree.

So it is of prime importance to the decision of the present case for this Court to ascertain from Judge Roble's decree of October 23, 1930, whether or not the decree amounted to an adjudication or determination by the Chancellor of the strenuously contested issue whether or not Stuart Wood held certain disrupted lands involved in the complainant's claim against him in the capacity of a trustee for said Tampa Water Works Company, or in his personal capacity as his own individual property.

Counsel for appellant argues with conviction that in Walter Wood's suit against the Tampa Water Works Company he charged three things: (1) that 203 shares of the stock held by the Stuart Wood Estate really belonged to the corporation; (2) that the winding up of and the distribution of the assets of the corporation was being needlessly delayed and exorbitant salaries were being paid its officers; and (3) that

the lands held by Stuart Wood and now by his estate in reality belonged to the corporation.

He says that, as opposing counsel concede, that there was no attempt on the part of the complainant to prove the first, that the proof as to the second also failed (as opposing counsel likewise concede) and that therefore Judge Robles in making his final ,decree appointing a permanent receiver must have grounded it on the third. He argues that this must be so because the chief issue in the case prior to Judge Robles' decree was whether or not the corporation was being defrauded of moneys by the Stuart Wood Estate and points to the language of Judge Robles' order in which he appoints a permanent receiver and directs him to institute proceedings to accomplish an accounting "between the representatives of the estate of Stuart Wood and the corporation, and to recover for the corporation such sums as may be found to be justly due it by the estate of the said Stuart Wood and the representatives of said estate," pointing out that this particular paragraph and language are not appropriate to any of the other charges made in the bill. Counsel accordingly sums it up by saying that Judge Robles could not and would not have rendered the decree in favor of Walter Wood on the merits had he not found from the evidence that Stuart Wood held the disputed lands as trustee, and that inasmuch as this Court must have expressly held the evidence sufficient to support that decree in order to affirm it on a prior appeal, that such issue has become a settled point in the receiver's favor that Judge Parks had no authority or right to overrule.

Counsel for appellee on the other hand argues forcefully that the three decisions of this Court have settled only three propositions: (1) that Walter Wood as a stockholder could rightfully maintain his bill in equity for the dissolution of

the corporation; (2) that on such bill he was entitled to secure the appointment of a permanent receiver to take ·charge of the affairs of the corporation and to wind up its business and distribute its assets to the stockholders of Tampa Water Works· Company; and (3) that the court determined that it had the power to pass upon the *merits* of the receiver's contest of the claim of a non-resident stockholder who had filed a claim for participation in the distribution.

· In this connection counsel for appellee says that the *merits* ·of the claims of the receiver have been passed on in none of the earlier proceedings. In support of his contention he ·points to the three questions presented to the Supreme Court ·on the second appeal, which was the one that brought up for appellate review Judge Robles' decree on the merits, and shows by such points that the question of whether or ·not the disputed lands were held by Stuart Wood's estate :as trustee or individually was not presented to and therefore not ruled on, by the Supreme Court. He also calls :attention to the language of the Supreme Court in denying a petition for rehearing in Wood v. Provident Trust Co., 152 Sou. Rep. 192, in which the appellate court expressly ·stated that in its decree it was not passing on the merits of the receiver's claim. Counsel for appellee also calls attention to the statement in this Court's original opinion to ·the effect that nothing contained in either the first or second ·decisions of the court precludes the Chancellor from proceeding to hear the receiver's contest on its merits.

If the view that Judge Robles did not, in his decree of ·October 23, 1930, determine whether or not the lands were held in trust is correct, then there is no conflict between the findings of Judge Robles and Parks on that question, :and further discussion of this proposition is unnecessary.

But if it is incorrect, then there is a direct conflict insofar as the question of whether or not the designated lands were held by Stuart Wood in trust or individually is concerned, and it thereupon becomes necessary to determine the effect of that conflict. In the last mentioned event there are three principles of law which might possibly bear upon the determination of it—"law of the case," *res adjudicata* and *stare decisis*.

By "law of the case" is meant the principle that the questions of law decided on appeal to a court of ultimate resort must govern the case in the same court, and the trial court, through all subsequent stages of the proceedings and will seldom be reconsidered or reversed, even though they appear to have been erroneous. Wells on *Res Adjudicata* and *Stare Decisis,* p. 569. Or, as otherwise stated, "whatever is once established between the same parties in the same case continues to be the law of the case, whether correct on general principles or not, so long as the facts on which such decisions were predicated continue to be the facts in the case." Gee v. Williamson, 1 Port. (Ala.) 313, 27 Am. Dec. 628; 15 R. C. L., p. 959.*

Less limited in the scope of its application than "law of the case" is the doctrine of *res adjudicata.* Inhering in all courts of civilized nations and, as is said in one case, an obvious rule of expediency and justice, *res adjudicata,* is a fundamental doctrine universally recognized. No better enunciation of it, perhaps, can be found than that given by

---

*A good illustration of a proper application of this doctrine is afforded in the second appeal in this case. On that appeal, this Court said that the question of the right of a stockholder to maintain a bill in equity for the dissolution of a corporation has been decided on the first appeal, that it had thereby become the law of the case and was therefore no longer open for discussion or consideration.

Black in his work on Judgments. He states it in two main rules, as follows: First, a point which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, cannot again be drawn in question in any future action between the same parties or their privies, whether the causes of action in the two suits be identical or different; and, second, a judgment rendered by a court of competent jurisdiction, on the merits, is a bar to any future suit between the same parties or their privies upon the same cause of action, so long as it remains unreversed. Black on Judgments, 2nd Ed., Vol. II No. 504.

The principles and rules which govern the doctrine of *res adjudicata* were first formulated, apparently, in the Duchess of Kingston's case, 20 Howell's State Trials, 355-652. The language that the court there used, perhaps the best-known and most widely quoted on the subject, may be worth including here: "From the variety of cases relative to judgments being given in evidence in civil cases, these two deductions seem to follow as generally true. First, that the judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or as evidence, conclusive between the same parties, upon the same matter, directly in question in another court. Secondly, that the judgment of a court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive upon the same matter, between the same parties coming incidentally in question in another court for a different purpose. But neither the judgment of a concurrent nor exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment."

This Court has expressly stated that, in order to make a matter *res adjudicata,* there must be a concurrence of identity in thing sued for, identity of cause of action, identity of persons and parties to the action, and identity of quality in persons for or against whom claim is made. Lake Region Hotel Co. v. Gollick, 110 Fla. 324, 149 Sou. Rep. 204; Gray v. Gray, 91 Fla. 103, 107 Sou. Rep. 261; Brundage v. O'Berry, 101 Fla. 320, 134 Sou. Rep. 520. This is in line with the second of the two rules above stated by Black; the first is commonly denoted as estoppel by matter of record, and the second as *res adjudicata.*

As an obvious corollary to the principle arising from the above rules that a decree or judgment is binding on all parties and their privies, and recognized in many cases (15 R. C. L., p. 1005, and cases there cited) is the general rule that all who are neither parties to a judgment, nor privies to such parties, are wholly free from the estoppel of the judgment. Florida recognizes and follows this rule. Coral Realty Co. v. Peacock Holding Co., 103 Fla. 916, 138 Sou. Rep. 622; Reddick v. Meffert, 32 Fla. 409, 13 Sou. Rep. 894; Marvin v. Hampton, 18 Fla. 131.

In the instant case the estate of Stuart Wood was not a party to the suit in which Judge Robles' decree was rendered. Appellant contends, however, that for all practical purposes it *was* a party, that the defense, though in the name of the Tampa Water Works Company was in behalf of the estate of Stuart Wood from the beginning and was controlled by the representatives of said estate, and that its relationship to the litigation has been such as to preclude it from denying the binding force of Judge Robles' decree. If this contention were sustained, *"res adjudicata"* not "law of the case" might be applicable as an estoppel by matter of record, or as it is most commonly called, as

an estoppel by judgment, as we shall hereinafter demonstrate.

There can be no question but that, in order for a person or corporation to be brought within the estoppel of the rule of *res adjudicata* it is not necessary for him to have been a formal record party. His conduct may have been such as to give him the status of a party in actuality, and in such event the courts will not withhold from him the application of the rule because of the technical objection that he was not a party on the record. See Elizabethport Cordage Co., v. Whitlock, 37 Fla. 190, 20 South. Rec. 255; Plumb v. Goodnow, 123 U. S. 560, 8 Sup. Ct. Rep. 216, 31 L. Ed. 268; Green v. Bogue, 158 U. S. 478, 15 Sup. Ct. Rep. 975, 39 L. Ed. 1061; Tootle v. Coleman, 107 Fed. 41, 57 L. R. A. 120.

Widest of the three in the scope of its application, perhaps, is the doctrine of *stare decisis*. So well known as to render discussion of its almost superfluous, it is a maxim to the effect that when a point of law has been settled by decision, it forms a precedent which is not afterwards to be departed from. Bouvier's Law Dictionary. It should "in the main be strictly adhered to" but "nevertheless there are occasions when a departure from it is rendered necessary in order to vindicate plain and obvious principles of law, and to remedy a continued injustice." The Madrid, 40 Fed. 677.

If, therefore, it was essential that Judge Robles, in rendering the decree that he did, pass upon the question of whether or not the Stuart Wood lands were held in trust, then he must have decided, as a matter of law, from the evidence before him, that they were held in trust. And the Supreme Court, in upholding the decree of Judge Robles to that effect must have decided as a matter of law that

the evidence was sufficient to support his finding. The doctrine of *stare decisis,* as distinguished from the doctrine of "law of the case" or *res adjudicata,* is susceptible of application to a subsequent judicial determination of the same questions of law between parties not bound as parties or privies on the record of the earlier case in which the decision was made.

The present case is not the case of Walter Wood against the Tampa Water Works Company, but is the case of the Receiver of the Tampa Water Works Company against the Estate of Stuart Wood, deceased. The fact that they are closely inter-related can make no difference in the obvious fact that the present case, and the former case, are as much two separate and distinct proceedings as they would have been had the receiver seen fit to institute in the State of Pennsylvania or elsewhere a separate action in a separate tribunal to recover from the estate of Stuart Wood the sums of money alleged to be due the Tampa Water Works Company by reason of the claim that the corporation of which Stuart Wood was the controlling stockholder had been defrauded out of moneys and properties belonging to the corporation but unlawfully claimed and taken as his individual assets by said controlling stockholder, Stuart Wood. Hence the doctrine of "the law of the case," which applies only to subsequent stages of procedure in the same case, can have no application in the decision of the present appeal.

Nor can the doctrine of *res adjudicata* have any application on this appeal to the separate rights of the Stuart Wood estate that have since been brought into controversy by reason of the claim of the receiver asserted against the representative of that estate by authority of Judge Robles' decree of October 23, 1930, allowing the receiver to insti-

tute proceedings against such estate, either in the pending case or in a separate action, unless it be established that the decree of October 23, 1930, become binding on the Stuart Wood estate as a party "in the larger sense" to the proceeding antedating that decree, and that such decree amounted to an actual decision of the same proposition of law or fact that was actually and directly put in issue in the earlier proceedings. *Res adjudicata* would apply only to issues that were actually judicially passed upon and determined by the Chancellor under such circumstances as to constitute a legal decision amounting to an estoppel by judgment against the Stuart Wood estate as to that identical point on the present appeal, because of its having been a party "in the larger sense" to the earlier proceeding wherein the legal decision was rendered on the identical issues.

A judgment on the merits constitutes a bar to any subsequent action on the same claim or demand, but operates as an estoppel only as to portions actually litigated and determined where the second action is on a different claim or demand, or is on the same claim or demand as against the same parties and others who were not parties before. McEwen v. Growers Loan & Guaranty Co., 116 Fla. 540, 156 Sou. Rep. 527.

It is settled law that, in order for a person to be bound by the former adjudication of a case, he must not only appear as a party in both cases, but must appear in both in the same capacity or character. Beals v. Cone, 27 Colo. 473, 62 Pac. Rep. 949; Fuller v. Metropolitan Life Ins. Co., 68 Conn. 55, 35 Alt. Rep. 766; Amsterdam First Natl. Bk. v. Shuler, 153 N. Y. 163, 47 N. E. Rep. 262, 60 A. L. R. 601; 15 R. C. L., p. 1012, and cases cited. However, it may happen that the interests of the party in his several capacities or character may be before the court in the same

litigation. In such event, the reason for the rule having failed, the rule ceases, and he is bound. Cornell v. Green, 43 Fed. 105; Colt v. Colt, 48 Fed. 385; Brown v. Howard, 92 Fed. 537; Sparks v. Etheredge, 89 Ga. 790, 15 S. E. Rep. 672.

It is argued by the appellant that the interest of the estate of Stuart Wood in these two litigations, to the extent of determining whether or not these lands were held in trust by Stuart Wood, and so by his estate, or individually, was the same. If they were not held in trust in the suit against the Tampa Water Works Company in the first instance, the receiver should not have been appointed—if they were he should have been. If they were held in trust, the contest of claim by the receiver in the instant case should be allowed, the only question remaining unsettled being the actual amounts due—if they were not, it should not be. It is argued further that although the representative of Stuart Wood's estate might have participated in the defense in both cases in different character, its interest is the same, the point to be decided is the same, and the evidence by which it is to be determined is the same and that therefore the reason for the rule having failed the rule fails as to the requirement that the suits must be litigated in the same capacity to constitute the decision in one an estoppel in the other.

It cannot be successfully denied that the estate of Stuart Wood, though not a party in name in the earlier Wood v. Tampa Water Works Company case, was yet a party "in the larger sense" within the rule on the subject we have heretofore set out in this opinion. It is admitted in the answer that "Edward R. Wood, Jr., as executor of the estate of Stuart Wood, together with the Provident Trust Company, his co-trustee, with whom he has always con-

sulted, controls the Tampa Water Works Company." Both Wood and an officer of the Trust Company testified as witnesses. Wood was an officer in the Tampa Water Works Company. The suit was, of course, against the Tampa Water Works Company, but they, controlling the estate of Stuart Wood, which was the largest stockholder, being in direct charge and control of the company, assuredly had charge of the defense, controlled the proceedings, employed the attorneys and through them presented and cross-examined witnesses, and took the appeal from Judge Robles' decree. Certainly, insofar as the Stuart Wood estate was concerned, there was every compliance with the rule laid down in Cecil v. Cecil, 19 Md. 72, 81 Am. Dec. 626, referred to by Mr. Justice COCKRELL in the case of Ottensoser v. Scott, 47 Fla. 276, 37 Sou. Rep. 161, 66 L. R. A. 346, as a "leading case" on the subject and with numerous other cases upon the point. See Green v. Bogue, 158 U. S. 478, 15 Sup. Ct. Rep. 975, 39 L. Ed. 1061; Lipscomb v. Postell, 38 Miss. 476, 77 Am. Dec. 651; State v. Coste, 36 Mo. 437, 88 Am. Dec. 148; Ludy v. Larsen, 78 N. J. Eq. 237, 79 Atl. Rep. 687, 37 L. R. A. (N. S.) 957; Ashton v. City of Rochester, 133 N. Y. 187, 30 N. E. Rep. 965, 31 N. E. Rep. 334, 28 A. S. R. 619; Black on Judgments, 2nd Ed. No. 540; 10 R. C. L., p. 1117, et seq.

It is next suggested that although the Stuart Wood estate may have been a party "in the larger sense" in the original suit by Walter Wood against the Tampa Water Works Company, that it nevertheless appeared in that case and in this one in two different capacities.

That the representatives of the estate of Stuart Wood controlled in the earlier case the defense of the Tampa Water Works Company by virtue of its connection with that company cannot be gainsaid. As the company's officers,

agents and largest stockholders the duty devolved upon the legal representatives of Stuart Wood's estate in the first case to defend the suit brought by Walter Wood as a minority stockholder against the corporation and such duty would have been theirs so long as they held the stock and controlled the corporation had there been no connection whatsover on their part with the estate of Stuart Wood.

In the present case the action is directly against the representatives of the estate of Stuart Wood through the Provident Trust Company of Philadelphia, as surviving trustee under Stuart Woods' will, and such trust company, as representative of Stuart Wood's estate, controls the defense solely by virtue of the fact that it is now acting as surviving trustee for, exercises control over, and is in charge of, the estate sought to be subjected by the receiver to an accounting liability. The duty of defending the present action would devolve upon such representative had there never been any previous connection of said representative with the Tampa Water Works Company as a stockholder.

Hence, while it may appear that the Provident Trust Company as legal representative of the estate of Stuart Wood was in the earlier phases of this litigation prior to Judge Robles' decree of October 23, 1930, a party in fact if not in name by virtue of its stock ownership and control of the defendant Tampa Water Works Company, and defended in that capacity by interposing the identical defense that has been interposed by it in this case against the claim of the receiver, said legal representative is now defending as a formal party of record and is interposing such defense at this time in its own right as a party defendant to the claim sought to be enforced by the receiver.

But as we have heretofore pointed out, it often so happens that the interests of a party in all of his several ca-

pacities may be so put in actual controversy before a court in a single proceeding as to make the party who undertakes to litigate on so broad a basis, an actual party "in the larger sense" to what is adjudicated in that litigation, thereby estopping him by what is decided therein from re-litigating any actually determined propositions by questioning same in another and subsequent suit wherein that party becomes an actual party of record in whatever capacity as a litigant.

It would seem therefore that, under what appears of record in this case, the appellee, Provident Trust Company of Philadelphia, actually did make itself a party "in the larger sense" to the original suit of Walter Wood v. Tampa Water Works Company of which company it was the controlling stockholder, although it was not in the first suit as a party of record. This conclusion follows because it appears that the Provident Trust Company undertook to control the defense of that litigation by defending on its merits as well as on other grounds, the asserted claim that Stuart Wood's estate had become liable, by reason of fraud and mismanagement, to account to the Tampa Water Works Company for assets of the company charged to have been by Stuart Wood wrongfully withheld and converted to his own use against the corporation's interest and against the interest of Walter Wood as a minority stockholder of said corporation.

So if it be found on this appeal that Judge Robles in his decree of October 23, 1930, actually decided against the representatives of the Stuart Wood estate on the merits of the corporation's right to recover, as distinguished from its right to maintain an accounting suit against the Stuart Wood estate for an accounting for assets supposedly wrongfully withheld by Stuart Wood from the Tampa Water Works Company as charged by Walter Wood in the original

bill of complaint, such decision necessarily became *res adjudicata* of the receiver's right to recover in this, a subsequent proceeding, and Judge Parks was in error in undertaking to render a decree in disregard of such showing of *res adjudicata* of the controversy appearing in the record of the case before him, despite the fact it was not specially pleaded by the receiver in vindication of his claim against the Stuart Wood estate. See Little v. Barlow, 37 Fla. 232, 20 Sou. Rep. 240, 53 Am. St. Rep. 349.

So we must approach a decision of the principal question involved on the present appeal in the light of the inescapable conclusion that the relation of the representatives of the Stuart Wood estate has been such throughout all phases of this litigation as to preclude such representatives from now denying the blinding force and effect of whatever was decided by Judge Robles' decree of October 23, 1930. This is so, because as we have already pointed out, the same attorneys who then represented the Tampa Water Works Company now represent the Stuart Wood estate; the actual controversy is in all essential or important particulars the same, and the pleadings and evidence show that Stuart Wood, in his lifetime, and his personal representatives after him, have throughout this entire litigation from the beginning, dominated and officered the Tampa Water Works Company, and undertaken in its name and in its behalf, to resist by every means the Walter Woods minority stockholders' claims set up in the bill of complaint brought by Walter Wood against the Tampa Water Works Company on the basis of an asserted equity that a permanent receiver should be appointed and directed to recover in behalf of Tampa Water Works Company from the Stuart Wood estate the moneys and properties Walter Wood charged to have been unlawfully taken from said corporation by Stuart

Wood as a controlling stockholder to the prejudice of other stockholders entitled to participate in a distribution of its assets upon its being wound up as a corporate *functus officio*.

It undoubtedly appears from the record in this connection that an issue was formed by the pleadings in the Wood v. Tampa Water Works Company phase of this litigation, whether or not the Stuart Wood Estate had or had not received moneys or properties of the Tampa Water Works Company for which an accounting and recovery should be awarded. Upon the issues made by the Walter Wood bill and the answer of Tampa Water Works Company a vast amount of testimony was taken and the case decided by Judge Robles thereon, as evidenced by his final decree of October 23, 1930, which appears to be in accordance with the prayer of the Walter Wood bill and definitely to close that phase of this case because the decree thus rendered was a final decree on the merits of that controversy and was affirmed as such by this Court which declared concerning it: "There is evidence amply sufficient to support the allegations of the bill and the decree of the Chancellor appointing a receiver." See Tampa Water Works Co. v. Wood, 104 Fla. 306, 139 Sou. Rep. 800.

However, the question recurs upon the proposition whether or not Judge Robles' decree of October 23, 1930, amounted to a finding upon the evidence in the case up until that time that Stuart Wood was *guilty* of the charge made against him and his estate in the bill of complaint filed against the corporation by Walter Wood. That decree may be construed and aided by the entire record (Elizabethport Cordage Co. v. Whitlock, 37 Fla. 190, 20 Sou. Rep. 255; Taylor v. Branham, 35 Fla. 297, 17 Sou. Rep. 552, 39 L. R. A. 362, 48 Am. St. Rep. 249), and if it amounts to a

finding of guilt of fraud against Stuart Wood and his estate in favor of the corporation, Tampa Water Works Company, then the receiver in this case, who is the *alter ego* of the Tampa Water Works Company in his capacity as a prosecutor of his receiver's claim against the Stuart Wood estate for the benefit of the corporation he represents, is entitled to claim the benefit of such finding as *res adjudicata* against the representative of the Stuart Wood estate which was a party "in the larger sense" to the earlier controversy and resulting decree.

But the decree of October 23, 1930, makes no specific finding on the issue of fraud involved in the complainant Walter Wood's charge that Stuart Wood had obtained money and property of the Tampa Water Works Company consisting for the most part of the proceeds of land which Stuart Wood is alleged to have held in trust for the Tampa Water Works Company under the circumstances set forth in the Walter Wood bill of complaint, and subsequently repeated and reasserted in the receiver's contest of the claim of Stuart Wood's estate for a proportionate distribution of the corporation's assets on the basis of his stock ownership in the corporation being wound up. The most that can be deduced from Judge Robles' decree, construed and aided by the record at the time that decree was rendered, is that Judge Robles found from the evidence a sufficient showing of probable cause to believe that a fraud had been committed to warrant not only the appointment of a permanent receiver to avoid further mismanagement as implied in the complainant's specific charge that the corporation was being continued as a corporate entity for the sole benefit of salaried officers and majority stockholders after the corporation's corporate purpose had been fulfilled and it should have been wound up, but to bring appropriate proceedings

to recover from any stockholder who had been substantially charged with defrauding the corporation out of any of its assets, the amount of loss thereof which may have been sustained by the Tampa Water Works Company.

The circumstances that Judge Robles did not specifically find in his decree of October 23, 1930, that the alleged fraud of Stuart Wood was proven, as contended for by appellants, and that he apparently negatived any such idea by giving direction and authority to the receiver to bring other proceedings in the same suit or in other jurisdictions to establish the fraud charged against Stuart Wood and the representatives of his estate, and that this court in its opinion denying the petition for rehearing in Wood v. Provident Trust Company, 113 Fla. 260, 152 Sou. Rep. 186 (text 192), expressly refused to put a construction on the Robles decree that would have precluded the further consideration by the Chancellor of the weight and sufficiency of the evidence on that proposition in deciding the controversy between the appellant receiver, and the Stuart Wood estate concerning the charges of fraud adopted and reasserted by the receiver on the basis of the evidence already taken, impels us to the conclusion on this appeal that the doctrine of *res adjudicata* cannot be applied in the receiver's favor on the assumption that there was an estoppel by judgment* created against the appellee herein by virtue of the previous decree, which decree, as we have pointed out, cannot be construed as having amounted to a specific decision of that issue.

And for a like reason the doctrine of *stare decisis* can

---

*The phrase "estoppel by judgment" is here used as synonymous with the phrase "estoppel by matter of record" which is more often used.

not be applied to operate as a ground for reversal of Judge Parks' decree because if Judge Robles in his October 23, 1930, decree did not make a finding as a matter of law against Stuart Wood on the issue of fraud now before this Court on appeal from Judge Parks' decree to the contrary, it follows that the application of the doctrine of *stare decisis* must fail for lack of a *decisionem* upon which to predicate.

It is inevitable therefore, that the decree of Judge Parks' herein appealed from, must be dealt with by this Court in the light of those appellate principles that would be applicable to any other decree arrived at by a Chancellor in his course of adjudicating an equitable controversy on conflicting evidence.

On the merits of the appeal itself, divorced from the other contentions heretofore discussed, appellant argues that Judge Parks' decree and accompanying opinion are so inconsistent with and contradictory of material facts admitted by the pleadings as to require its reversal on that score alone. Be that as it may, an appellate court is not so much concerned with the particular reasoning that may have led Judge Parks to decree as he did on the merits, as with the correctness of his conclusion, although it by no means appears that the alleged inconsistencies in reasoning the appellant complains of have been so clearly made to appear as to require reversal of the conclusion reached on the apparent basis thereof. Hence, if the Chancellor's conclusion be correct, the decree *may* be sustained on this appeal, notwithstanding any faulty reasoning by which such conclusion was arrived at by the Chancellor. See Smith v. Croom, 7 Fla. 180; Broward Estates Corp. v. Chillingworth, 93 Fla. 366, 112 Sou. Rep. 64; Hoopes v. Crane, 56 Fla. 395, 47

Sou. Rep. 992; Ritch v. Adams, 102 Fla. 983, 136 Sou. Rep. 719.

The conclusion that Judge Parks reached was that the receiver's contest should be denied because the lands involved were held individually by the estate of Stuart Wood and not in trust for the Tampa Waterworks Company. Certainly this conclusion conformed to and was consistent with the pleadings, and, if correct, should be sustained, regardless of how erroneous the Chancellor's reasoning may have been.

This brings us to the final question raised by appellant— the question of the sufficiency of the evidence to support Judge Parks' decree.

An examination of the evidence does not convince this Court that Judge Parks' decree must be reversed on the ground of its insufficiency to support the finding made. The evidence points rather strongly to the conclusion that the "office" property, though purchased with a view to its use by the company, was purchased individually by Stuart Wood. Though possibly less conclusive, the evidence also tends to show that the "lake" and "river" lands, though acquired originally for the company, were purchased from it and paid for by Stuart Wood within less than a year of the final acquisition of the lands. The evidence also tends to show that throughout all these transactions Stuart Wood exercised that high degree of integrity, honesty and good faith which his connection and position with the company demanded.

Counsel for appellant in his briefs cites authorities to the effect that an officer of a corporation cannot acquire a title to or interest in property "prejudicial" and "adverse" to the corporation. The general principles which those authorities lay down are indisputably good law. But it

seems that we have here a case where the acquisition of that title or interest, at the time of its accomplishment, was not "prejudicial" nor "adverse to," but on the contrary was advantageous for, the corporation. If this be true, certainly the fact that the lands in later years greatly increased in value should make no difference. Stuart Wood may not have had the title to the lands placed in himself until 1912, but, if there was any transfer to him of the company's interest in the "lake" lands, that transfer was made when he charged himself on the company's books with the purchase price of the lands. And at that time the evidence seems to show that such was for the benefit of, and not detrimental to, the company.

The general rule that fraud is never presumed but must be proved applies in equity as well as at law. Sommers v. Apalachicola Northern R. Co., 85 Fla. 9, 96 Sou. Rep. 151. And the burden of proving fraud is on the party complaining. Glass v. Craig, 83 Fla. 408, 91 Sou. Rep. 332. The presumption is in favor of the correctness of the findings of fact of the Chancellor, and they should not be disturbed unless clearly erroneous. Lovett v. Armstrong, 61 Fla. 681, 54 Sou. Rep. 381; Shippey v. Shippey, 97 Fla. 881, 122 Sou. Rep. 272; Harp v. McRae, 100 Fla. 141, 129 Sou. Rep. 499; Roxton v. Armstrong, 115 Fla. 506, 155 Sou. Rep. 755.

Applying the foregoing rules to the determination of this case on the merits of the receiver's appeal now before us, it has not been made to appear that there is any cause for reversal, therefore said decree should not be disturbed.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.