786 So.2d 1271 (2001)
FLORIDA DISCOUNT PROPERTIES, INC., a Florida corporation, Charles Glover and Jack Gerzina, Appellants,
v.
WINDERMERE CONDOMINIUM, INC., a Florida not-for-profit corporation, Appellee.
No. 4D00-3002.
District Court of Appeal of Florida, Fourth District.
June 20, 2001.
Steven A. Mason of the Law Offices of Steven A. Mason, P.A., Hollywood, for appellants.
Marvin P. Pastel II of Becker & Poliakoff, P.A., Fort Lauderdale, for appellee.
STEVENSON, J.
In the instant lawsuit, appellants, Charles Glover and Jack Gerzina, two former *1272 directors of Windermere Condominium Association, purchased certain common area property of Windermere and a recreational facilities lease associated with it for $20,000.[1] Gerzina and Glover formed Florida Discount Properties (FDP) as a holding company for the property. FDP then filed suit against Windermere seeking $216,000 in back rent. Windermere filed a third party complaint alleging that Gerzina and Glover conspired to breach their fiduciary duty and to usurp the corporate opportunity by obtaining the common areas property and the associated recreational facilities lease. Windermere also alleged that the lease was unconscionable. The trial court ruled in favor of Windermere on all counts and found that the lease was unconscionable and void.[2] In addition, the trial court ordered that Windermere must be given a right of first refusal to purchase the property for $20,000, the same amount that Gerzina and Glover paid for it. We affirm and write primarily to address the trial judge's remedy in this case.
First, the record evidence was more than sufficient to support the finding that Gerzina and Glover breached their fiduciary duty and usurped the corporate opportunity in relation to the recreational lease. Windermere entered into the recreational facilities lease with the developer in April of 1971. The developer retained ownership of the common areas under the terms of the lease, and each condo unit owner was to pay thirty-five dollars a month, which amounted to $43,000 a year. The lease is a ninety-nine year lease with rights reverting back to the developer, it contains an escalation clause, a right to foreclose, and provides that Windermere pay for all of the maintenance.
For twenty-five years, Windermere paid $750,000 in lease payments. Kelly McLean, an owner of twenty-five units and a director on the board, testified that at a March 1995 board meeting, the board voted to buy the lease. McLean further testified that negotiations were held with the developer, and the board went forward with plans to purchase the lease for an agreed upon price of $35,000. At a December 1996 board meeting, Gerzina and Glover, along with attorney David Schottenfeld, urged Windermere to fight the lease on the basis that it was unconscionable. Initially, a quorum was not present for the meeting because only Gerzina, Glover and McLean were present. There was some urgency to get the 1997 budget passed in a timely fashion in order to comply with state law. As a result, Attorney Schottenfeld suggested that they appoint two more board members to make it a nine member board, giving them a quorum with five members present. Two unit owners who were present at the meeting were appointed, and a motion was made to accept the budget with only McLean voting against it. The budget did not include the purchase price for the recreational lease property.
Subsequently, a schism developed between the board members and two board groups developed, each claiming to be the association's board. A receiver was appointed in October of 1997, and arbitration proceedings were held to recall Gerzina and Glover from the board. Prior to their removal from the board, Gerzina and Glover began negotiating with the owner to *1273 purchase the recreational lease property. The arbitration proceedings ended on February 3, 1998, with Gerzina and Glover being removed from the board. On February 12, 1998, Gerzina and Glover finalized the contract to purchase the property. By November of 1998, Gerzina and Glover had started lien foreclosures against individual unit owners, and FDP filed suit against Windermere for $216,000 in back rent. We affirm the trial court's finding that Gerzina and Glover "utilized their position on the [board] to negotiate an advantageous economic position for themselves personally to the detriment of Windermere."
As support for Windermere's right of first refusal to purchase the property from its former directors, Gerzina and Glover, the trial court relied upon two alternative theories: first, section 718.401(1)(f), Florida Statutes (1997),[3] and second, as disgorgement for usurping the corporate opportunity. We affirm the remedy on the latter of these grounds. See Safety Int'l, Inc. v. Dyer, 775 F.2d 660, 662 (5th Cir.1985)(citing Int'l Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 577 (Tex. 1963), and Canion v. Texas Cycle Supply, Inc., 537 S.W.2d 510, 513 (Tex.Civ.App.1976))(stating that the officer or director holds the usurped opportunity as constructive trustee for the corporation); see also Pruyser v. Johnson, 185 So.2d 516, 521 (Fla. 2d DCA 1966)(citing McGregor v. Provident Trust Co. of Phila., 119 Fla. 718, 162 So. 323 (1935))(finding that an officer cannot acquire title to or interest in the property, real or personal, prejudicial and adverse to the corporation). Because the trial judge properly granted the remedy based on the disgorgement of the corporate opportunity, we do not find it necessary to address whether section 718.401(1)(f)'s right of first refusal, the other basis on which the trial judge granted the remedy, retroactively impaired the contract.
Accordingly, we affirm the trial judge's ruling and specifically find that the remedy afforded Windermere was proper. We have considered the other issues raised on appeal and find no error.
AFFIRMED.
WARNER, C.J., and HAZOURI, J., concur.
NOTES
[1] Under the recreational facilities lease, the developer retained ownership of the common areas which were the subject of the lease (i.e., pool, kiddie pool, clubhouse, picnic table area, basketball hoop, tennis courts, handball courts, and a play area for children).
[2] Section 718.122(1)(a)-(i), Florida Statutes (1997), contains detailed guidelines for determining whether a condominium recreational lease is "presumptively unconscionable."
[3] Section 718.401(1)(f) provides in pertinent part:

(f)1. A lease of recreational or other commonly used facilities entered into by the association or unit owners prior to the time when the control of the association is turned over to unit owners other than the developer shall grant to the lessee an option to purchase the leased property, payable in cash, on any anniversary date of the beginning of the lease term after the 10th anniversary, at a price then determined by agreement. If there is no agreement as to the price, then the price shall be determined by arbitration conducted pursuant to chapter 44 or chapter 682. This paragraph shall be applied to contracts entered into on, before, or after January 1, 1977, regardless of the duration of the lease.